# Commonwealth *v*. Juniata Coke Company, Appellant.

*Taxation—Manufacturing corporation—Mining—Apportionment.*

The fact that a manufacturing corporation organized, under the act of 1874, employs a portion of its capital for other than strictly manufacturing purposes, so as to supply itself with the raw material of manufacture, does not strip it of its character as a manufacturing company, but for such portion of its capital so invested, it is not entitled to exemption from taxation.

A corporation organized under the act of April 29, 1874, P. L. 73, for the purpose of " carrying on the business of mining coal and the manufacturing of coke therefrom," which invests a portion of its capital in mining coal to supply its coke ovens, is liable to taxation on such portion of its capital so invested ; but on the remainder of its capital it is exempt, under the act of June 1, 1889, P. L. 431.

Argued June 2, 1893.    Appeal, No. 24, May T., 1893, by defendant, from judgment of C. P. Dauphin Co., June T., 1892, No. 535, for plaintiff, on appeal from tax settlement.    Before STERRETT, C. J., GREEN, WILLIAMS, MITCHELL, DEAN and THOMPSON, JJ.

Appeal from tax settlement.    Before McPHERSON, J.

The case was tried by the court without a jury, the facts being found as follows :

" 1. The defendant is a corporation of the commonwealth chartered in February, 1891, under the general corporation act of 1874, and its supplements, for the purpose of ' carrying on the business of mining coal and the manufacturing of coke therefrom, and the transporting, selling and marketing the said coke and coal, and to this end to purchase, lease, acquire and in its corporate name take, hold, convey and dispose of such coal, coal lands, mineral rights, mining rights and privileges, and such other real estate and such personal property as may be necessary for the purpose of its organization, and generally to carry on the said coke and coal business in all its branches and details.'    P. L. of 1891, p. 476.

" 2. Its capital stock is $246,614.98.    During the tax year ending the first Monday of November, 1891, it declared no dividend, and its capital stock was accordingly appraised at $246,614.98, upon which valuation a tax of three mills was im-

posed under the general revenue act of 1889, for the portion of the year from February 13th to November 2d.

" 3. The defendant owns a considerable quantity of coal land from which it mines the coal which is used in its ovens. It sells no coal and buys none, but is engaged solely in taking its own coal out of the ground and converting it into coke for the market. Its property is situated in the county of Fayette.

" 4. It is not engaged in brewing or distilling malt or spirituous liquors, and does not enjoy or exercise the right of eminent domain.

### " CONCLUSIONS OF LAW.

" This case is identical in principle with Com. v. Westinghouse El. Mfg. Co., 151 Pa. 265. The present defendant has two distinct corporate franchises : one, to mine and sell coal, and the other to mine coal and manufacture coke therefrom. Its franchise to mine and sell coal is in no sense a manufacturing franchise. Mining is a mere appropriation of an article furnished by nature, and it is like the liberation of natural gas or oil from the earth : Com. v. Light and Power Co., 145 Pa. 117. The defendant is, therefore, not organized exclusively for manufacturing purposes ; and this is not modified by the fact that it does not sell any coal. If it has the powers of an ordinary coal mining company (and this is clearly apparent from its charter), if it may mine and sell coal, it must be treated as in part a coal mining company, although it does not use this particular franchise. In the Westinghouse Electric Company's case, the charter of the defendant contained a power to buy and sell the securities of other companies, and this fact was held to be fatal to the claim that it was organized exclusively for manufacturing purposes, although it had never used the power referred to, and in fact was doing no other business than manufacturing.

" We can see no possible distinction between that case and the one before us, and we, therefore, obey the ruling of the Supreme Court and conclude that the defendant is not organized exclusively for manufacturing purposes, and it is taxable upon its whole capital stock.

" It will be observed that the defendant's condition is similar to that of the National Oil Company, No. 172, March T., 1892, Dauphin C. P. [page 516 below], and we repeat the request

there made for a reconsideration of the decision announced last year on the exempting clause of the act of 1889. We refer to the subject again, only because the present case furnishes an additional reason for respectfully urging a favorable reception of that request. For it is manifest that, unless all the coke companies of this region have charters substantially identical with the defendant's charter, there will certainly be inequality of taxation, although the actual manufacturing business is the same in each instance and ought to be equally free or equally burdened.

" Moreover, as the rule now is, we cannot reach, and, therefore, cannot consider the interesting and important question raised by the defendant's evidence, namely, whether its capital stock invested in coal land is exempt on the ground that this land is a necessary adjunct of its manufacturing business, or whether the tax ought to be so apportioned as to rest only on this part of the capital stock. A similar question exists, also, as to certain other classes of corporations, for example, slate companies and fire brick companies, but it cannot now be decided so as to lay down a rule which will bear equally upon a whole class. For, if a particular charter happens to contain a power (whether used or unused) which is not manufacturing, this alone is decisive, and further discussion is merely academic. But this state of affairs is the rule. Indeed, the combinations of corporate powers asked for and granted are so numerous that one may fairly say, there is no rule governing the form of charter to be issued to any given class, but every charter is an exception.

" Without repeating what was said in the National Oil Company's case with reference to the practical difficulties in the way of the existing rule, we will leave the subject, feeling confident that the Supreme Court will consider the matter carefully, both as judges and as men well acquainted with affairs, and in some appropriate way will point out a remedy."

The court gave judgment for amount of tax on whole capital. Defendant appealed.

*Error assigned* was, entering judgment as above.

*Lyman D. Gilbert, John H. Weiss* and *M. M. Cochran* with

him, for appellant, cited: Com. v. Northern Electric Light & Power Co., 145 Pa. 105; Act of June 1, 1889, P. L. 420; Commonwealth v. Westinghouse Mfg. Co., 151 Pa. 265 ; Com. v. Westinghouse Air Brake Co., 151 Pa. 276; Act of April 29, 1874, P. L. 23 ; Com. v. Lackawanna I. & C. Co., 129 Pa. 346.

*James A. Stranahan,* deputy attorney general, *W. U. Hensel,* attorney general, with him, for appellee, cited: Commonwealth v. Lackawanna Iron & Coal Co., 129 Pa. 346; Com. v. Northern Electric Light & Power Co., 145 Pa. 105.

OPINION BY MR. JUSTICE WILLIAMS, October 2, 1893:

This case involves a question not settled by the Commonwealth v. Pottsville Iron and Steel Company [the preceding case], which has just been decided. In that case a power had been conferred upon a manufacturing company to mine its raw materials, but when the company came to make its investments and organize its business it discarded this power and arranged to supply itself with its materials and fuel by purchase. We held in that case that the mere possession of a power, ancillary to its manufacturing business, which had never been used and the use of which had been effectually declined by the character of its business organization, did not deprive a manufacturing company of the exemption of its capital stock from taxation under the proviso in the act of 1889. In this case we have the power to mine coal for the manufacture of coke, and we have the continued use of this power as a means of providing itself with the coal from which the coke is made. The production of coke from coal is a process of manufacture. The production of coal by removing it from its bed and bringing it to the surface is a process of mining. They have no necessary connection. The legislature has seen fit to separate and classify corporate powers, and to confer upon one class of corporations an exemption from taxes which other classes are required to pay. Manufacturing companies must purchase their supplies in the market. It may be convenient for them to produce their raw material, as in the case of the appellant, and the denial of the power to do so may work some inconvenience, and increase the cost of the manufactured article; but the exemption is conferred upon the manufacturer, as distinguished from the

mining, the transportation, the storage, or other business agency employed in handling the raw material, the fuel, and other supplies required by the manufacturer. It ought not to be extended so as to cover operations outside the legitimate processes of manufacturing. We are in this case to determine therefore, first, whether the appellant is a manufacturing company. Next, whether, if a manufacturing company, it is using any part of its capital in such a manner as to infringe upon the field occupied by corporations that are required to pay taxes on their capital stock.

We understand from the findings of the court below, and from the evidence, that this company was organized as a manufacturing company, and has been steadily engaged in the manufacture of coke. We understand that it has the power to mine its own coal and has in fact done so from the first, and that it has in this way supplied itself in part with the raw material it has used. This as we have held in Commonwealth v. Pottsville Iron and Steel Company, supra, does not strip it of its character as a manufacturing company, or of the protection which the law has extended to manufacturers. But on the other hand the fact that its business is manufacturing will not enable it to bring under the protection of its privilege any ancillary line of business in which it may find it economical or convenient to engage, or cover the employment of its capital for any other than strictly manufacturing purposes. What then is the situation of the appellant? It is in name, in business purpose, and in product prepared for the market, a manufacturing company. In the conduct of its manufacturing business it seeks to cheapen its raw material, and thereby the cost of its product by mining the coal it consumes. This is not necessary to the process of manufacture, though it may be both economical and convenient for the manufacturer. It is therefore the employment of part of its capital for a purpose not within the letter or the spirit of the exemption. As to so much of its capital it is subject to taxation precisely as though no exemption existed. The use of the word "exclusively" in the proviso in the act of 1889, given the office we have assigned to it in the Pottsville Iron and Steel Company's case, does not stand in the way of our conclusion in this case. It was intended, as we there held, to discriminate between com-

panies organized for the conduct of two or more lines of business simultaneously, and such as were organized for the purpose of manufacturing. A company incorporated for the latter purpose will not lose its character or its privileges, because of an effort to supply itself with what it needs for its manufacturing business in some cheaper way than by purchase. Such effort, and the reservation of the power to make it, are in aid of the purposes of the company as a manufacturer. Neither as to the public nor the commonwealth is it a change of organization or of business. Whether the appellant mines its coal, or buys it, makes no difference with its product except as to its cost. In either case it makes and it sells coke and nothing else. It is not a mining company. It neither sells coal nor offers it for sale. It simply seeks to provide itself by mining, instead of purchase, with the coal needed for its ovens. This, as we have seen, is such a use of a part of its capital as takes the sum so used out from under the exemption provided by the act of 1889, and subjects it to taxation in the same manner and at the same rates that other capital so employed is subject to. This is a proper case for apportionment. The appellant is entitled to exemption as a manufacturing company. Upon so much of its capital as is employed in the effort to supply itself with coal it must pay taxes.

The judgment is reversed and record remitted that the apportionment may be made.

See also the preceding and following cases.

*Taxation—Manufacturing corporation—Mining company—Act of 1889.*