## Com. *v.* Savage Fire Brick Co., Appellant.

*Taxation—Manufacturing corporation—Mining company—Act of* 1889.

A corporation organized for the "mining of fire clay and the manufacture of fire brick, tiles and other articles made from fire clay," which invests a portion of its capital in mining clay for its own use from land owned or leased by it, is subject to taxation on such portion of its capital so invested; but on the remainder of its capital it is exempt, under the act of June 1, 1889, P. L. 431.

Argued May 29, 1893. Appeal, No. 2, May T., 1893, by defendant, from judgment of C. P. Dauphin Co., Jan. T., 1892,

No. 268, for plaintiff, on appeal from tax settlement. Before STERRETT, C. J., GREEN, WILLIAMS, MITCHELL, DEAN and THOMPSON, JJ.

Appeal from tax settlement. Before McPHERSON, J.

The case was tried by the court without a jury, the facts being found as follows:

"1. The defendant is a corporation of the state of Pennsylvania chartered January 3, 1874, under the act of July 18, 1863, P. L. of 1864, p. 1102, entitled ' An act relating to corporations for mechanical, manufacturing, mining and quarrying purposes' and its various supplements. The purposes of said corporation, as set forth in its certificate of association, are: ' Mining of fire clay and the manufacture of fire brick, tiles and other articles made from fire clay, to sell such articles, and buy, lease and hold, such real estate and other property as may be necessary for the purpose of conducting said business.' Its principal office is at Keystone Junction in the county of Somerset, a branch office also being maintained in the city of Pittsburgh. It is not engaged in the brewing or distilling of spirituous or malt liquors, and does not enjoy and exercise the right of eminent domain.

"2. Its capital stock is $80,000, which was fully paid up at the organization by conveyance to the corporation of certain real estate, mining fixtures, brick works, machinery, etc. During the tax year ending the first Monday of November, 1890, it declared three dividends thereon, amounting to 30 per cent. The settlement in question seeks to collect a tax of fifteen mills upon the whole capital stock.

"3. The real estate of the company consists of the following parcels: (1) Two acres of ground owned in fee, and several tenant houses owned in leasehold at Keystone Junction. On these two acres a brick works is located. (2) About four hundred acres in fee at Williams station, sixteen miles east of Keystone Junction; upon this tract there are several tenement houses, a brick works and a fire clay mine. (3) A leasehold of four hundred acres at Gooseberry, about two miles east of Williams station. In connection with this leasehold, the company owns a railway right, fifty acres of surface right in fee and about five or six tenant houses. (4) Four acres in fee at Hyndman station, about two miles east of Gooseberry; upon

this tract a brick works is located, and about one mile distant is the silica rock quarry, which is leased by the company.

" The works at Keystone Junction received its clay in part from Williams and part from Gooseberry mines. The Williams works is supplied entirely from the mine at that point, while the Hyndman works gets its fire clay from the Williams and Gooseberry mines, and its silica from the quarry adjoining.

" 4. The actual value of the manufacturing plant owned by the company, including buildings, machinery and land, is $65,000. The value of the Williams mine is $10,000. The value of the dwelling houses owned by the corporation is $8,000. These dwelling houses are indispensable to the carrying on the works at the points where they are situated ; almost without exception they are the only houses at said points. The mine is so connected with the manufacture of the brick that if the company did not own it, it would be very difficult to obtain enough clay for the works, and they would be run to such disadvantage as to destroy all profit on certain grades of brick, thus rendering the works almost valueless and probably compelling the abandonment of the industry.

" 5. We also find as a fact that scarcely any fire brick works exists which does not own its own mine, and that as an almost universal rule the successful operation of a brick works depends upon the owning of its mine.

" The company pays a royalty. upon the mine and quarry which it leases and operates.

" In our opinion these facts present a question identical with that decided in Commonwealth v. East Bangor Consolidated Slate Co., No. 633, June Term, 1890. We adopt the opinion there filed as if it was here repeated. We also refer to the discussion found in Commonwealth v. William Mann Company, No. 385, Jan. term, 1892 [150 Pa. 64].

" This is, we think, an extreme case, but we regard ourselves as bound by Com. v. Lack. I. & C. Co., 129 Pa. 346, as we have explained in the case of the East Bangor Slate Co. The defendant has and exercises a mining franchise ; its capital stock would have been apportioned under the act of 1885, but the act of 1889 taxes the whole amount.

" We conclude that the defendant is a manufacturing corporation, actually carrying on manufacturing within the state,

but during the tax year of 1890 it was not organized exclu-sively for manufacturing purposes.  No portion, therefore, of its capital stock is exempt from taxation under the last proviso to section 21 of the revenue act of 1889."

The court gave judgment for the amount of tax on the whole capital.  Defendant appealed.

*Error assigned* was entering judgment as above.

*Edwin L. Porter,* for appellant, cited : Act of June 30, 1885, P. L. 199 ; act of June 8, 1891, P. L. 229 ; Com. v. Lacka-wanna I. & C. Co., 129 Pa. 346 ; Com. v. Mahoning Rolling Mill Co., 129 Pa. 360 ; Com. v. Wm. Mann Co., 150 Pa. 64.

*James A. Stranahan,* deputy attorney general, *W. U. Hen-sel,* attorney general, with him, for appellee, cited : Com. v. Lackawanna I. & C. Co., 129 Pa. 346 ; Coal Co. v. Com., 91 Pa. 47 ; MacKellar etc. Co. v. Com., 10 Atl. R. 780 ; D., L. & W. R. R. v. Com., 66 Pa. 64.

OPINION BY MR. JUSTICE WILLIAMS, October 2, 1893:

The appellant company was incorporated under the provis-ions of the act of 1863.  The purpose of its organization as expressed in the certificate of association was the " mining of fire clay and the manufacture of fire brick, tiles and other ar-ticles made from fire clay."  It entered at once upon the busi-ness of manufacturing fire brick and other articles made from fire clay which, or the larger part of which, it mined for its own use from land owned or leased by it.  Now whether re-gard be had to the primary legal organization of this company from which it derives its corporate life, or to the subsequent organization of its business plant, and the line of industry en-tered upon by it, the same conclusion is reached.  This is not a mining company.  It is a manufacturing company.  As such it is attempting to supply itself with materials by the exercise of powers thought by its projectors to be incidental and ancil-lary, but the exercise of which the legislature has subjected to taxation.

This case is therefore on all fours with the case of Common-wealth v. Juniata Coke Company [the preceding case], in

which an opinion has just been filed, and is ruled by it.   The capital stock is exempt, except such part of it as is invested in its mining operations, and that is subject to taxation.

The judgment is reversed and record remitted, that the proper judgment may be entered in the court below.

See also the preceding and following cases.

*Taxation—Manufacturing company—Oil company.*