BALD MOUNTAIN MINING COMPANY, Respondent, v. WELSH, State Director of Taxation, Appellant.

(271 N. W. 819)

(File No. 7930.  Opinion filed March 4, 1937)

*Walter Conway*, Atty. Gen., and *R. F. Drewry*, Asst. Atty. Gen., for Appellant.

*Clinton G. Richards*, of Deadwood, for Respondent.

POLLEY, J.  This action is brought for the purpose of recovering from the Director of Taxation certain tax money collected by said director from plaintiff as "Gross Income" tax for the month of March, 1935.  Plaintiff claims that it should be taxed as a "manufacturer" under the provisions of paragraph (a) of section 2, chapter 184, Session Laws of 1933; while the defendant claims that plaintiff should be taxed under paragraph (e) of said

section. Plaintiff paid the full amount, $371.94, demanded by defendant as provided by said paragraph (e), under protest and now brings this action to recover $278.65, the difference between $371.94 and the amount of the tax had it been levied under the provisions of paragraph (a) of said section. Paragraph (a) of said section reads as follows: "Upon every person, engaging or continuing within this state in the business of manufacturing, processing, compounding, or preparing for sale, profit or use, any article or articles, substance or substances, commodity or commodities, the amount of such tax to be equal to the value of the articles manufactured, processed, compounded or prepared for sale, as shown by the gross proceeds derived from the sale thereof by the manufacturer, except as hereinafter provided, multiplied by a rate of one-fourth of one percent. The measure of this tax is the value of the entire product manufactured, processed, compounded, or prepared for sale, profit or use in this state, regardless of the place of sale or the fact that deliveries may be made to points outside the state."

Paragraph (b) relates to wholesalers and is not material in this case. Paragraph (c) relates to livestock and is not involved in this case.

Paragraph (d) relates to incomes or salaries and is not involved in this case, but paragraph (e) reads as follows: "Upon every person, located in, or engaging or continuing in any business, trade, profession or occupation within this state other than those businesses included in the four preceding subdivisions of this section, the amount of the tax levied and imposed by this act shall be equal to the gross income of such person multiplied by at rate of one per cent."

This is a sort of grab-bag provision intended to prevent the escape of any trade, profession, or occupation that cannot be reached under the provisions of either paragraphs (a), (b), (c), or (d), and it is the claim of defendant that plaintiff should be taxed under the provisions of this paragraph.

The term "manufacturer" as used in paragraph (a) of section 2 of said chapter is defined in paragraph (i) of section 1 of said chapter as follows: "The term 'Manufacturer' shall mean persons engaging, or continuing, within the state in the business of manu-

facturing, compounding, processing, producing or preparing for sale, profit or use, either as a finished or partly finished product, any article, substance, product or commodity, the production of which the manufacturer is calculated for sale at wholesale, or for further processing and manufacture."

Plaintiff had judgment, and defendant appeals.

In order to determine which of these paragraphs should govern in this case, it is necessary to examine in some detail the various operations performed by plaintiff in carrying on its business.

Plaintiff is a domestic corporation organized for the purpose in part, as stated in its articles of incorporation, "to carry on the business of a mining, smelting, and refining company," and is engaged in the business of mining ore and extracting the gold and silver content thereof. In carrying on this business the ore is first broken from its place in the mine by the use of high explosives. It is then hoisted and trammed to plaintiff's cyanide mill. The ore is what is known as low grade, containing an average value of only $6.59 in gold, and 29 cents in silver per ton of ore, or a total value of only $6.88 per ton; in other words, approximately 3.5 pennyweights of gold and one ounce of silver per cubic yard of ore. Mining the ore and bringing it to the mill costs plaintiff an average of $2.29 per ton. In order to obtain any value from the ore it is necessary to extract therefrom its gold and silver content. To do this involves a long, difficult, and technical chemical process.

There are no custom mills in this state where ore can be treated and the values extracted therefrom. The nearest of such mills is one at Omaha, Neb., one at East Helena, Mont., and one at Golden Cycle Mine near Colorado Springs, Colo. The freight charges for shipping plaintiff's ore to either of these places is $5.02 per ton to Omaha; $5.90 per ton to East Helena; and $6.87 to Colorado Springs. Either of these amounts plus the cost of mining the ore exceeds the total value of the gold and silver contained in the ore as it comes out of the mine. The result of this situation is that in order to operate the mine at all it is necessary for plaintiff to own and operate a reduction plant of its own.

The ore as it comes from the mine is in fragments in size from very small pieces to chunks weighing as much as 100 pounds or more. It is first run through the crusher, where it is reduced

to such a size that it will all pass through a one and one-half inch mesh screen. It is then conveyed to the ball mill for grinding. As it passes into the ball mill, a quantity of cyanide in solution with water is added. Cyanide in solution with water is a solvent of gold and silver, and its purpose in the process of extraction of gold and silver is to dissolve the particles of gold and silver in the ore. After the cyanide solution has been added to the ore in the ball mill, the ore is ground and reground until it is as fine as flour. At that stage of the process the whole mass is known as "pulp." The pulp is conveyed from the ball mill into tanks where more of the cyanide solution is added. It is then conveyed to large tanks where it is aereated and agitated for a considerable length of time. Then the solution now carrying the gold and silver content of the ore is drawn off from the tanks, and the pulp is then flushed out of the tanks as waste or "tailings," and is washed down the creek. The solution as drawn from the tanks has now become "gold solution" and is stored in tanks ready for the next process. This gold solution contains as much of the gold and silver that was in the ore as can be economically recovered by the cyanide process; in case of plaintiff's ore the average recovery 84.4 per cent. of the gold and 58.4 per cent. of the silver contained in the ore.

Gold and silver in solution with cyanide have a strange affinity for zinc in fine particles, and to separate the gold and silver from the gold solution zinc dust is added to the solution. When the particles of gold and silver in the solution come in contact with the particles of zinc dust, the particles of gold and silver adhere to the particles of zinc. The zinc dust is decomposed, or partly destroyed by the cyanide in the solution and the three metals, the gold and silver and zinc, are precipitated to the bottom of the tank. The cyanide solution is then drawn off and conveyed to storage tanks where it is stored for further use. The precipitate at the bottom of the tank is then gathered and washed and dried. It is then put into a crucible with proper fluxes and fused. The zinc volitalizes and the gold and silver are run off into bars and sold to the United States Mint at Denver, Colo. The time required for the above processing is approximately eight days.

When shipped to the Mint, the gold in the bars has a fineness of only 390—1000 fine, and the silver only 578—1000 fine; there-

fore it must be further processed and the base matter removed before it is ready to be coined into money.

It seems to us that the long series of processing above described brings the plaintiff fairly within the provisions of paragraph (a) of section 2, and within the definition of "manufacturer" as the same is defined in paragraph (i) of section 1.

As applied to the facts in this case, a manufacturer is a person engaged in the business of manufacturing or compounding or processing or producing or preparing for sale, profit, or use, either as a finished or partly finished product, any article, substance, product, or commodity which is calculated for sale or for further processing and manufacture. The entire operation of the plaintiff in the recovery of the gold and silver contained in the ore and preparing it for sale and further processing at the Mint is a long series of processing as the term is used in the definition of "manufacturer."

A corporation that is engaged in mining iron ore and selling the ore as it comes out of the ground is not a manufacturing company under a statute exempting manufacturing companies from certain taxes, although it would probably be exempt if such corporation also smelted and manufactured the ore. Cowling v. Zenith Iron Co., 65 Minn. 263, 68 N. W. 48, 33 L. R. A. 508, 60 Am. St. Rep. 471.; Graff v. Minnesota Flint Rock Co., 147 Minn. 58, 179 N. W. 562. But a company engaged in blasting, crushing, and delivering rock for roads is a manufacturing company under a tax exemption statute. Commonwealth, for Use of Rockcastle County, v. W. J. Sparks Co., 222 Ky. 606, 1 S. W. (2d) 1050. Making concrete by mixing sand, gravel, cement and water, and selling it in its raw and plastic form, is a manufacturer within a tax exemption law. Commonwealth v. McGrady-Rodgers Co., 316 Pa. 155, 174 A. 395. A corporation engaged in the business of making coke from coal is a manufacturing company and entitled to the tax exemption, nothwithstanding the fact that such corporation mines the coal from which the coke is made. Commonwealth v. Juniata Coke Co., 157 Pa. 507, 27 A. 373, 22 L. R. A. 232. The same principle is followed in Commonwealth v. Savage Fire Brick Co., 157 Pa. 512, 27 A. 374; Commonwealth v. Natl. Oil Co., 157 Pa. 516, 27 A. 374.

Webster's New International Dictionary defines process, in part, as follows: "A series of actions, motions, or operations definitely conducing to an end, whether voluntary or involuntary progressive act or transaction; continuous operation or treatment; a method of operation or treatment especially in manufacture. * * * Process denotes a progressive action or a series of acts or steps especially in the regular course of performing, producing, or making something; procedure denotes especially the method of prosecuting or conducting an operation or process * * *. To subject to a process of manufacturing, development, preparation for the market, to convert into marketable form, as livestock, by slaughtering, grain by milling, cotton by spinning, milk by pasteurizing, fruits and vegetables by sorting and repacking to make usable, marketable or the like as waste matter or an inferior defective, decomposed, substance or product by a process often a chemical process."

The Oxford Dictionary, vol. 7, page 1408, in part, defines process as follows: "A continuous and regular action or succession of actions, taking place or carried on in a definite manner, and leading to the accomplishment of some result. A continuous operation or series of operations. A natural or involuntary operation; a series of changes or movements taking place. The act of proceeding or coming forth from a source."

Under these definitions the plaintiff is a processing company, and under the statutory definition of manufacture plaintiff is a manufacturing company and entitled to be assessed under paragraph (a) of section 2.

The trial court reached the correct solution of the case.

The order appealed from is affirmed.

RUDOLPH, P. J., and ROBERTS and WARREN, JJ., concurring specially.

SMITH, J., not sitting.

RUDOLPH, P. J. (concurring specially). We concur in the opinion of Judge POLLEY to the extent that we believe the process of extracting the gold and silver from the ore is manufacturing or processing within the meaning of paragraph (a) of section 2, chapter 184, Session Laws of 1933. On the other hand, the business of taking the ore from the ground is not manufactur-

ing or processing but is simply mining. The facts alleged establish that the plaintiff is engaged in two separate and distinct businesses: First, that of mining the ore; and, second, that of processing the ore by extracting therefrom its gold and silver content. Such was the situation in the case of Commonwealth v. Juniata Coke Company, 157 Pa. 507, 27 A. 373, 22 L. R. A. 232, wherein it was disclosed that a single company mined coal and then manufactured or processed the coal it had mined into coke. The question presented to the Pennsylvania court was whether that company was engaged exclusively in manufacturing, and by reason of such fact exempt under Pennsylvania law from taxation. The court held that the company was engaged in two separate businesses, and that so much of its capital as was used exclusively for the manufacturing of coke was exempt from taxation, but that that part of its capital used in mining was not. In the case before us, we should apply a rule similar to that applied by the Pennsylvania court. A portion of the income of this plaintiff is derived from mining the ore; another portion of the income is derived from processing that ore and extracting therefrom the gold and silver content. The income derived from mining is subject to a tax at a higher rate than the income derived from the manufacturing. Upon a proper showing the trial court should allocate a portion of the income of this plaintiff to the business of mining the ore and a portion to the business of processing this ore. So much of the income as is derived from the mining should pay the tax provided in paragraph (e) of section 2 of said chapter 184, and so much of the income as is derived from processing the ore should be taxed at the rate provided in paragraph (a) of this section.

The case is here on demurrer to the complaint. From what has been said it follows that the trial court correctly overruled the demurrer. If plaintiff establishes the allegations of its complaint, it is entitled to recover, but not on the basis that its entire income is derived exclusively from manufacturing or processing. There should be presented a showing establishing the portion of the income derived from mining and the portion from processing.

The order should be, and is, affirmed.

ROBERTS and WARREN, JJ., concur in the opinion of RUDOLPH, P. J.

SMITH, J., not sitting.