# UNITED STATES v. PUBLIC SERVICE CO. OF COLORADO.

## No. 2855.

Circuit Court of Appeals, Tenth Circuit.

May 19, 1944.

Louise Foster, Sp. Asst. to the Atty. Gen., and Ivor O. Wingren, Asst. U. S. Atty., of Denver, Colo. (Samuel O. Clark, Jr., Asst. Atty. Gen., Sewall Key, A. F. Prescott, and Wm. B. Waldo, Sp. Assts. to the Atty. Gen., and Thomas J. Morrissey, U. S. Atty., of Denver, Colo., on the brief), for appellant.

Paul W. Lee, of Denver, Colo. (George H. Shaw, Donald C. McCreery, Wm. A. Bryans, III, and Charles J. Kelly, all of Denver, Colo., on the brief), for appellee.

Before PHILLIPS and HUXMAN, Circuit Judges, and RICE, District Judge.

RICE, District Judge.

The sole question in this case is whether or not the electrical energy in controversy

was sold for commercial consumption, as the term is used in the Revenue Act of 1932, 48 Stat. 256, Sec. 616, as amended Ch. 96, Sec. 6(a), Act 1933, 26 U.S.C.A. Int.Rev.Acts, page 615.[1] The applicable portion of said Act is as follows:

· "There is hereby imposed upon electrical energy sold for domestic or commercial consumption and not for resale a tax equivalent to 3 per centum of 'the price for which so sold, to be paid by the vendor under such rules and regulations as the Commissioner, with the approval of the Secretary, shall prescribe * * *."

The appellee, plaintiff in the trial court,[2] manufactured, distributed and sold the electrical energy to twenty different dairies operating in the city of Denver, Colorado; the tax was paid; all necessary steps required for maintaining suit were admitted; the cause was submitted for trial upon stipulation of facts; plaintiff prevailed; and the United States of America appealed.[3]

The stipulation discloses that the twenty dairies are each engaged principally in the business of pasteurizing, bottling and selling milk. A preponderance of the gross revenue of each is derived from the sale of pasteurized milk and cream. The supply of milk is bought from farmers and is brought to the dairy from milk stations in tank trucks and from country milk routes in cars. The raw milk is then pasteurized, bottled and sold, either at retail or wholesale. Each of the dairies also manufactures and sells ice cream and butter, but the predominant use of electrical energy is in the pasteurization of milk or some necessary operation in connection therewith, that is, cooling or refrigeration, pumping water, washing of bottles and cans.

The trial court found as a fact, "In all of the twenty dairies whose use of electrical energy is involved in this action, the processing and sale of pasteurized milk and cream, to render it fit for human consumption, represents the predominant character of the business * *" and reached the following conclusion of law, "The electrical energy involved in this action as utilized and consumed by the twenty dairies is not electrical energy sold for domestic or commercial consumption within the act, supra, but constitutes a 'process' within Article 40 of Regulations 42 adopted by the Commission of Internal Revenue * *".

Both the government and plaintiff now agree that the term "commercial" as used in the Act does not include all business activity. Both agree that Congress did not intend to tax energy sold for industrial consumption.

Recognizing the legislative intent to exclude from the operation of the Act electrical energy sold for industrial consumption, the Commissioner of Internal Revenue, with the approval of the Secretary of the Treasury, adopted Treasury Regulation 42, the applicable portion of which is Article 40, which reads as follows:

"Art. 40—Scope of tax. The tax is imposed upon electrical energy sold for domestic or commercial consumption and not for resale, except as provided hereinafter.

"The term 'electrical energy sold for domestic or commercial consumption' does not include (1) electrical energy sold for industrial consumption, e. g. for use in manufacturing, processing, mining, refining, shipbuilding, building construction, irrigation, etc., or (2) that sold for other uses which likewise can not be classed as domestic or commercial, such as the electrical energy used by public utilities, waterworks, telegraph, telephone, and radio communication companies, railroads, other common carriers, educational institutions not operated for profit, churches, and charitable institutions. However, electrical energy is subject to tax if sold for use in commercial phases of industrial or other businesses, such as in office buildings, sales and display rooms, retail stores, etc.

" * * * Where the consumer has all the electrical energy used at a given location furnished through one meter, the predominant character of the business carried on at such location shall determine the classification of consumption for the purposes of this tax."

This regulation was promulgated June 17, 1932, and was revised under date of October 2, 1932, and again amended in 1933 after the amendment of Section 616. On November 28, 1941, after this suit was filed, the regulation was again amended by striking out the word "processing".

■ In view of the admitted legislative intent, the regulation defining industrial consumption, as distinguished from commercial consumption, was appropriate. The

---

[1] Hereinafter referred to as the Act.
[2] Hereinafter referred to as plaintiff.

[3] Hereinafter referred to as the government.

term "commercial" may have a broad or a narrow meaning. In its broad meaning it encompasses industrial enterprises or all business. In the narrow meaning of the term "commercial" is included only those enterprises engaged in the buying and selling of goods.[4] The legislative history of the Act would indicate that Congress was using the word "commercial" in the restricted rather than the broad sense.

The regulation classifies processing as being within the meaning of industrial. It attempts to distinguish industrial use from commercial use. In the first part it gives a general definition of industrial use, and includes therein processing. In the second part it defines generally what is meant by commercial use. In defining these two terms it is apparent that the Treasury Department had in mind the legislative history of the Act recently passed and expressed in the regulation the intent of Congress. This regulation, while it stands, has the force and effect of law unless it is in conflict with an express statutory provision.[5]

The regulation does not conflict with the express terms of the statute unless it may be said that processing is a commercial transaction as the term is used in the Act. The Treasury Department for nine years did not think so. The regulation, being a contemporary construction of the Act, is entitled to respectful consideration and is not to be overruled except for weighty reasons.[6]

The contention of the government now would seem to be that the regulation is invalid unless the word processing be interpreted as synonymous with manufacturing. The government now argues that none of

the dairies "derived its receipts directly from pasteurization of milk or carried pasteurization on as a business", but that pasteurization was merely an incident to the main enterprise of selling and distributing milk. With equal force, it might be contended that manufacturing is but an incident to the main business of the manufacturer, to-wit, the selling of the manufactured article. In the final analysis all business is commercial. If the ultimate aim of industry is the test to be used in determining whether or not electrical energy used in the industry is taxable, all such energy would be taxable, and the admitted intent of Congress would be defeated.

Since passage of the Act of 1932, and subsequent to the adoption of the regulation referred to, Congress has amended, extended, and re-enacted this law without any substantial change of the provision now in question. Congress has at all times attempted to tax only electrical energy sold for domestic and commercial consumption. This action by Congress is persuasive evidence of the legislative approval of the regulation.[7]

It will be assumed that the Treasury Department in the use of the word "processing" in the regulation used it in its ordinary meaning. Webster defines "process" as follows:

"to subject (especially raw materials) to a process of manufacture, development, preparation for the market, etc.; to convert into marketable form, as livestock by slaughtering, grain by milling, cotton by spinning, milk by pasteurizing, fruit and vegetables by sorting and repacking."

The courts have generally accepted this definition.[8] The Michigan court in Michi-

4 Jordan v. K. Tashiro, 278 U.S. 123-127, 49 S.Ct. 47, 73 L.Ed. 214.

5 Douglas County, etc., v. Commissioner of Internal Revenue, 9 Cir., 43 F.2d 904; Williams v. Commissioner of Internal Revenue, 8 Cir., 44 F.2d 467; United States v. Grimaud, 220 U.S. 506, 31 S.Ct. 480, 55 L.Ed. 563; Maryland Casualty Co. v. United States, 251 U.S. 342, 40 S.Ct. 155, 64 L.Ed. 297; Brewster v. Gage, 280 U.S. 327, 50 S.Ct. 115, 74 L.Ed. 457; Fawcus Machine Co. v. United States, 282 U.S. 375, 51 S.Ct. 144, 75 L.Ed. 397.

6 Educational Films Corp. v. Ward, 282 U.S. 379, 51 S.Ct. 170, 75 L.Ed. 400, 71 A.L.R. 1226; Curtiss v. Commissioner of Internal Revenue, 5 Cir., 57 F.2d

847. Fawcus Machine Co. v. United States, 282 U.S. 375, 51 S.Ct. 144, 75 L. Ed. 397.

7 Brewster v. Gage, 280 U.S. 327, 50 S. Ct. 115, 74 L.Ed. 457; United States v. Dakota-Montana Oil Co., 288 U.S. 459, 53 S.Ct. 435, 77 L.Ed. 893; Aldrew Oil & Gas Co. v. Alexander, 10 Cir., 70 F. 2d 160.

8 Moore v. Farmers Mutual Mfg. & Ginning Co., 51 Ariz. 378, 77 P.2d 209; Bedford v. Colorado Fuel & Iron Co., 102 Colo. 538, 81 P.2d 752; Bald Mountain Mining Co. v. Welsh, 65 S.D. 117, 271 N.W. 819; Kennedy v. State Board of Assessment and Review, 224 Iowa 405, 276 N.W. 205; Nye & Nisson v. Weed Lbr. Co., 92 Cal.App. 598, 268 P. 659; Colbert Mill & Feed Co. v. Okla-

gan Allied Dairy Ass'n v. Auditor Gen., refers to pasteurizing of milk as "industrial processing". Pasteurizing milk is "processing" as the term is ordinarily understood.

By the terms of the law as construed by the regulation in effect at the time of the sale herein, the electrical energy was exempt from the tax. Aside from the regulation, however, the electrical energy is exempt. It was not sold for commercial consumption within the meaning of the Act. All industry in a sense is commercial, but admittedly industrial consumption is not included. A manufacturer intends ultimately to sell his goods—his income is derived from the sale of his product. True, the twenty dairies were buying and selling milk, but they were doing more —they were processing—pasteurizing raw milk in preparation for the market. Although the product sold was milk, it was not raw milk. The electrical energy was not used in the commercial phase of the dairying enterprise, but in the processing or industrial phase of the enterprise.

Affirmed.

homa Tax Comm., 188 Okl. 366, 109 P. 2d 504; Michigan Allied Dairy Ass'n v. Auditor Gen., 302 Mich. 643, 5 N.W.2d 516-518.