**KISHMAN FISH COMPANY, Appellant, v. GLANDER, Tax Comm., Appellee.**

Board of Tax Appeals.

No. 9850. Decided December 6, 1945.

Edward C. Lay, Sandusky, on behalf of the appellant.

Hon. Hugh S. Jenkins, Atty. Genl., and A. A. Cartwright, Asst. Atty. Genl., Columbus, on behalf of the appellee.

## ENTRY

This cause came on for hearing on an appeal of the Kishman Fish Company from a sales and use tax assessment made against it by the tax commissioner for the period from January 1, 1941, to January 1, 1944, the sales tax assessment being in the sum of $540.56 and the use tax being in the sum of $809.91, making a total assessment of $1350.47. The penalty on the entire assessment was waived by the tax commissioner. Said cause was submitted upon the transcript of the proceedings before the tax commissioner, the statement and brief of counsel for appellant.

It is claimed by appellant that the transactions upon which the tax complained of was laid were purchases by it of tangible personal property used directly in the production of tangible personal property for sale by processing and are, therefore, not subject to the sales or use tax. According to the statement of counsel for appellant the items involved were used in the actual catching of fish in Lake Erie. As to the nature of the fishing process, the following appears from said statement:

"First, I would like to state the nature of the fishing process. First, nets are set in the lake either from scows or setting boats. After these nets are set, and I am talking primarily about trap nets although the procedure is primarily the same for gill nets, the nets are lifted by what are known as trap net boats. These are open boats about thirty eight feet long with a pulling apparatus at the stern. The nets are pulled over this pulling apparatus by a power winch. The net is then pulled over the side of the boat and fish removed from the lifting car by means of dip nets.

"The fish are placed on a sorting board from which the various species are sorted into boxes on the floor of the boat. The net is then pushed over the side of the boat and allowed

to sink. The fish are then taken ashore where they are re-packed for shipment.

"Trap net is made from various sized webbing seamed to manilla rope. The net is weighted down by iron sinkers weigh-ing about one and one-quarter pounds and is bouyed up by galvanized floats approximately ten inches long with a three inch diameter. After the net is constructed, it is treated with a net preservative; for example, copper oleate. When dry, it is tarred by placing it in a tar vat and allowing a mixture of hot tar and E-Oil to penetrate it.

"The nets are then transported by trucks on which power wheels have been placed with which to pull the nets on and off the trucks to the fields for drying. They are transported in the same way from the fields to the boats for setting.

"The items of this audit and the other audits are those which are used in the actual catching of the fish in the lake, such as nets, anchors, anchor lines, etc., and all accessory items used in the actual catching of the fish. All contested items of this audit and the other audits before this Board are items used in the catching of fish in the lake."

The facts set forth in said statement are not denied by the appellee and the Board accepts the professional statement of counsel for appellant as true.

The sole question, therefore, presented to this Board is whether the sales to the appellant and use by it of items used in the actual catching of fish constituted sales and use of prop-erty used directly in the production of tangible personal prop-erty for sale by processing. Secs. 5546-1 and 5546-25 GC, as in effect at the time of the assessment complained of, read in part as follows:

" 'Retail sale' and 'sales at retail' include all sales except-ing those in which the purpose of the consumer is * * * (b) to incorporate the thing transferred as a material or a part, into tangible personal property to be produced for sale by manu-facturing, assembling, processing or refining, or to use or con-sume the thing transferred directly in the production of tangible personal property for sale by manufacturing, pro-cessing, refining, mining * * *

"* * * 'Use' means and includes the exercise of any right or power incidental to the ownership of the thing used, except-ing as hereinafter provided.

"When the purpose of the consumer is * * * (b) to incor-porate the thing purchased as a material or a part, into tangible personal property to be produced for sale by manufacturing,

assembling, processing, or refining, or to use or consume the thing transferred directly in the production of tangible personal property for sale. by manufacturing, processing, refining, mining, * * *."

The question as to whether property used in sorting, cleaning and preparing fish for the market is used directly in the production of tangible personal property for sale by process is not before the Board. The question is: Does the actual catching of fish constitute the production of fish by processing?

The word "process" has been defined in Moore v. Farmers' Mutual Mfg. & Ginning Company, 51 Ariz. 378, 77 Pac. (2d) 209, and in several other cases as follows:

"The word 'process' means to subject, especially raw material, to a process of refining, development, preparation for the market, etc., and to convert into marketable form, as live stock by slaughter, grain by milling, cotton by spinning, milk by Pasteurizing, fruits and vegetables by sorting and repacking."

In determining the meaning of the word "process" as used in the above statutes, consideration should be given to the words associated with it, to wit, 'manufacturing' and 'refining'. The Board is of the view this word contemplates a change in the form of the article by some sort of process. In the case of Warehouse Company v. Jolley et al., 172 Ga. 172, 157 S. E. 276, the following is held:

"The words used in the constitutional amendment are the 'manufacture or processing of cotton', etc. The meaning of the word 'processing' must be construed in connection with its associate word 'manufacture'. It refers to the different processes through which cotton becomes manufactured. 'Processing', considered with the context and plain meaning of its associate word 'manufacture' must mean more than mere preparation for manufacture, and indicates the subjection of the cotton to some process in refining subsequent to the mere separation of the cotton referred to in the amendment from its seed."

In the case of Commonwealth v. Juniata Coke Company, 157 Pa. 507, 27 Atl. 373, property used exclusively in manufacturing was exempt from taxation. The court held that in the case of a company carrying on the business of mining coal

and the manufacturing of coke therefrom, the property used in mining coal to supply its coke ovens was subject to taxation as that portion of its business was not manufacturing.

In Utah Power & Light Company v. Pfost, 52 Fed. (2d) 226, the following is said:

"Production or manufacture is a transformation of raw material into a change in form for use, * * *."

In the case of Kennedy v. Board of Assessment and Review, 224 Iowa, 405, 276 N. W. 205, cited in the opinion of the court in the case of **France Company v. Evatt, 143 Oh St 455, 458,** the court quotes with approval the following from the trial judge's opinion:

"It appears to the court that the production of crops by means of fertilization and cultivation is a growing of a crop rather than a processing of crops. Process as I understand the term is a change in the form of the article itself by artificial or natural means. * * * The growing of the article is not in the common use of the term a processing, but some change in the article after it is grown by means of special treatment is a processing."

The following is held in Zeigler v. People, 109 Colorado 252, 124 Pac. (2d) 593:

"The buying of cattle off of grass, putting them on feed and fattening them for 'market' is not a 'processing' within the common use of that term. A processing is some change in the product after it is grown by means of special treatment."

In Mill & Feed Company v. Tax Commission, 188 Okla. 366, 109 Pac. (2d) 504, the court held that feed sold to the owner of cattle for the purpose of feeding the cattle and preparing them for market or slaughter as corn fed cattle, is not sold for use in processing or preparing for sale. The court said:

"The feeding was a preliminary step in getting the cattle ready for 'processing' or 'preparing' for market."

The Board finds that the actual catching of fish is a preliminary step prior to the sorting, cleaning and getting the fish ready for market.

It is also claimed that the amendments to the above statutes effective September 27, 1945, which now exempt from the sales and use tax the sales and use of property which is to be used directly in commercial fishing, indicate that the legislature intended to exempt them in the former statutes. It appears to the Board that if the former statutes exempted such sales and use it would have been unnecessary to amend them. As stated in Kennedy v. Board of Assessment and Review, supra, "Taxation being the rule rather than the exception, it cannot be said that a later amendment to the sales tax statute, exempting fertilizers is retroactive and explanatory of the exemption in the original statute of materials used in processing." The Board, therefore, finds that property to be used in the catching of fish is not used directly in the production of fish for sale by processing, and that the sale or use thereof constitutes a retail sale or use within the meaning of §§5546-1 and 5546-25 GC, and, therefore, is taxable under said statutes as in effect at the time of the assessment.

It is, therefore, considered and adjudged by the Board of Tax Appeals that the action of the tax commissioner herein complained of be, and the same hereby is affirmed.