[No. 29188.   Department One.   March 7, 1944.]

*In the Matter of a Petition for Hearing by* YAKIMA FRUIT
GROWERS ASSOCIATION.[1]

*The Attorney General* and *George W. Wilkins, Assistant,*
for appellant.

*Conklin & Delle,* for respondent.

STEINERT, J.—The commissioner of unemployment com-
pensation and placement of the state of Washington ap-
pealed from a judgment and decree of the superior court
for Yakima county holding that certain labor performed
for the respondent, Yakima Fruit Growers Association, was
exempted and excluded from the terms of the unemploy-
ment compensation act (chapter 162, p. 574, Laws of 1937,
as amended by chapter 214, p. 818, Laws of 1939, Rem. Rev.
Stat. (Sup.), § 9998-101 [P. C. § 6233-301] *et seq.*) and re-
versing a contrary decision previously made by the com-
missioner.

[1]Reported in 146 P. (2d) 800.

Appellant's statement of the case as set forth in its brief is conceded by the respondent to be correct as to the facts and as to the preliminary procedure leading up to the trial in the superior court. We shall therefore adopt that statement as the factual basis of our decision, and shall quote the material parts thereof, as follows:

"This cause was initiated by the service of assessments calling for payment by the Yakima Fruit Growers Association, respondent, of contributions in the amount of $10,047.69 to the Washington Unemployment Compensation Fund. In successive appeals the statutory Appeal Tribunal and the Commissioner held the respondent liable for payment of the full amount of contributions assessed, denying respondent's contention that the services rendered were 'Agricultural Labor' under section 19(g) (6) (i) of the Unemployment Compensation Act [1937] as amended by chapter 214, Laws of 1939. (Section 16, chapter 214, page 857, Laws of 1939, Rem. Rev. Stat. (Sup.), Sec. 9998-119a, Subd. (g) (6) (i)). Upon further appeal the Superior Court of Yakima County sustained the Association's contention holding that the services in question were 'Agricultural Labor' under section 19[16] (g) (6) (i) of the Laws of 1939. The Commissioner now appeals to this court maintaining said services were not 'Agricultural Labor' under the controlling statute.

"The cause was presented to the Appeal Tribunal, the Commissioner and the Superior Court upon a stipulated statement of facts (Commissioner's Record p. 9). As the decision of this Court must also be based on said stipulation it is, for convenience, set forth herein. It provides:

1

" 'That the Petitioner [respondent herein], The Yakima Fruit Growers Association, is a Washington corporation, having its principal place of business located in the City of Yakima, Washington, and during its entire existence has been operated as a non-profit, cooperative organization.

2

" 'That all services hereinafter set out and performed by individuals for and in behalf of the petitioner [respondent] were performed exclusively within the State of Washington and within and upon the premises of the petitioner [respondent].

3

" 'That the employment, by virtue of which the commissioner contends unemployment compensation contributions are due, for all periods herein concerned, was performed by persons engaged as employees of the petitioner [respondent] in receiving, washing, drying, grading, packing, packaging, processing, freezing, storing, and/or delivery to storage or to market or to a carrier for transportation to market, agricultural or horticultural commodities, all of which duties were performed as a necessary incident to the preparation of such commodities for market in their fresh or raw condition. No services were performed by or for the petitioner [respondent] in connection with commercial canning or freezing or in connection with any agricultural or horticultural commodity after its delivery to a terminal market for distribution for consumption.

4

" 'That specifically, said services performed for and on behalf of the petitioner [respondent] by said employees upon the agricultural and horticultural commodities were as follows:

" '(1) receiving such commodities at the plant and checking them in;

" '(2) hand-trucking the commodities from the receiving platform;

" '(3) running the commodities through a washer for the purpose of removing excess deposits of lead, arsenate, acid and fluorine;

" '(4) sorting the commodities into their various grades;

" '(5) sizing the commodities for the purpose of obtaining uniformity in packing;

" '(6) packing the commodities into boxes;

" '(7) lidding and labeling said boxes;

" '(8) hand-trucking the boxes and commodities to and loading upon a carrier for transportation to market, or hand-trucking the boxed fruit to cold storage to await shipment, and then from cold-storage to said carrier and loading upon said carrier for transportation to market; and, further, that the employees rendering these services are commonly known and designated respectively as receivers, hand-truckers, dumpers, washing machine operators, sorters, packers, packing room flunkies, lidders, labelers, checkers, stampers, car loaders and stackers.

5

" 'That none of the services hereinbefore mentioned were rendered upon a farm, but were performed in packing houses and warehouses owned and operated by petitioner [respondent], although such services were the same and identical services usually rendered in preparing commodities for market upon a farm by those farmers having large enough farms to be able to afford the necessary equipment incident to the washing, sorting and packing of their own products.

6

" 'That all of the commodities upon which the above-mentioned services were performed moved in interstate commerce and were shipped from and sold and marketed outside of the State of Washington.

7

" 'It is further stipulated and agreed that during the period from January 1, 1940 until June 11, 1941, the services rendered and the employment referred to herein were within the definition of Agricultural Labor contained in the Federal Social Security Act, effective during said period, so that no contributions were required under said Act during said period by the United States on account of such services or employment.

8

" 'That in the event the services hereinabove set forth are determined to be employment within the contemplation of the Unemployment Compensation Act, the amounts set forth in the Statement of Account rendered by the Division of Unemployment Compensation, State of Washington, on the 6th day of June, 1942, for the periods from January 1, 1940 to and including June 30, 1941, in the total amount of Ten Thousand Forty Seven and 90/100 Dollars ($10,047.69) shall be deemed true and correct computations of the unemployment compensation contributions due and owing by petitioner [respondent] for such period, exclusive of interest, upon such employment; that a copy of said Statement of Account is attached hereto and made a part hereof. It is further stipulated and agreed, however, that this paragraph shall in no way effect any admitted liability on the part of petitioner [respondent].' "

At this point, and for reasons which will appear later, we direct attention to the fact that the material provisions of the stipulation quoted above are almost identical with the

admitted facts appearing in the case of *Cowiche Growers, Inc. v. Bates, infra,* to which a considerable portion of our subsequent discussion will be devoted.

The principal question presented by this appeal is whether under the facts contained in the above stipulation, the employment therein designated and the services therein referred to as having been performed for the respondent by its employees during the period from January 1, 1940, through June 30, 1941, constitute "agricultural labor" within the meaning of § 19 (g) (6) (i) of chapter 162, p. 612, Laws of 1937, as amended by § 16 of chapter 214, p. 857, Laws of 1939 (Rem. Rev. Stat. (Sup.), § 9998-119a (g) (6) (i)), the material portion of which reads as follows:

"(6) The term 'employment' shall not include:

"(i) Agricultural Labor; (services customarily performed by a farm hand on a farm for the owner or tenant of a farm)."

If the services so performed come within the term "agricultural labor" as parenthetically defined in the foregoing statute, then respondent would not be liable for the assessment fixed and imposed by the commissioner. If, on the other hand, the services so performed fall without that term, then respondent would be liable unless, for other reasons, the assessments be held invalid or uncollectible.

Respondent concedes that the identical question here presented was decided by this court in *Cowiche Growers, Inc. v. Bates,* 10 Wn. (2d) 585, 117 P. (2d) 624. The contentions now made by the respondent in this respect, however, are (1) that in two later cases, *In re Wenatchee Beebe Orchard Co.,* 16 Wn. (2d) 259, 133 P. (2d) 283, and *State v. Christensen,* consolidated with *In re Appeals of Hansen Brothers Dairy v. Riley,* 18 Wn. (2d) 7, 137 P. (2d) 512, this court so far departed from its holding in the *Cowiche* case that it can almost be said to have overruled that case, and (2) that, if such was not the effect of the two later decisions, we should nevertheless now specifically overrule the *Cowiche* case because of fundamental error formerly committed by this court in construing the applicable statute. In

short, respondent's contention is that the *Cowiche* case, *supra,* was wrongly decided and that the error, in part at least, has been recognized in the two later cases. To meet these contentions properly, it is necessary that we consult and analyze the three previously cited cases with the view of ascertaining what the exact questions in each case were, what this court specifically decided in each, and what effect the two later decisions have had upon the earlier one.

The *Cowiche* case, *supra,* was an *En Banc* decision, rendered October 9, 1941. The majority opinion was signed by six judges, and the dissenting opinion by two. One judge did not participate in the hearing and did not sign either opinion. In that case, the plaintiffs, Cowiche Growers, Inc., and Yakima County Horticultural Union, co-operative corporations, and sixteen other corporations and firms sought a declaratory judgment defining their rights, duties, privileges, and liabilities under the unemployment compensation act, in so far as it concerned their employees, who were engaged in rendering the services described in the complaint in that case. Plaintiffs' pleading set forth at length and in detail the services performed for them by their respective employees. The paragraphs of the complaint setting forth those services were quoted literally in the majority opinion or else in the dissenting opinion. The cause was decided on demurrer to the complaint. As pointed out in the dissenting opinion, the demurrer admitted as true the facts pleaded by the plaintiffs. A reference to the complaint, as quoted in the two opinions, will readily disclose that the services therein described were identically the same as those set forth in the stipulation quoted above in the instant case. Indeed, the probability is that the stipulation here was prepared and executed on the basis of the facts pleaded, and by the demurrer admitted, in the *Cowiche* case.

The principal question decided in the majority opinion, and the only question discussed in the dissenting opinion, in the *Cowiche* case was whether the services described in the complaint therein constituted "agricultural labor" within the meaning of § 19(g)(6)(i) of chapter 162, Laws

of 1937, as amended by § 16 of chapter 214, quoted above. There can be no possible doubt, then, that the principal question in that case was exactly the same question as the principal one presented in this case. ·

· The *Cowiche* case was an extremely important one not only because the question which was there presented was one of first impression in this court, but also because it was evident that the decision would materially affect the rights and obligations of at least eighteen different firms and corporations, both commercial and co-operative, all of which employed groups of individuals in receiving, washing, sorting, packing, and storing fresh fruits as a necessary incident to the preparation of such fruits for market in their fresh or raw condition. The case was thoroughly briefed and argued by able counsel appearing for the respective parties or as *amicus curiae*. Every argument urged in the present case was advanced in that one, and every legal authority cited here was, in addition to many others, presented and discussed there. The two opinions in the *Cowiche* case so thoroughly reviewed and analyzed the many authorities dealing with the definition of "agricultural labor," as found in the various statutes, and with the rules of statutory construction applicable thereto, that it is unnecessary to cover that ground again. We shall therefore confine ourselves to a statement of what the *Cowiche* case actually held, as follows:

(1) The purpose of the unemployment compensation act (chapter 162, p. 574, Laws of 1937), as expressed in § 2 thereof, is to reduce unemployment and economic insecurity due to unemployment, through the exercise of appropriate legislative action under the police powers of the state, and in order to effectuate that purpose a liberal construction of the act is enjoined.

(2) When agricultural or horticultural products leave the farmer or grower, as such, and are brought to an independent factory or packing house for processing, grading, packing, and marketing, such products thereupon enter the status of "industry," and the services performed by the

employees of the manufacturer or packing organization in processing, grading, packing, and marketing the fresh or raw products are not to be classed as "agricultural labor" within the meaning of § 19 (g) (6) (i) of chapter 162, p. 612, Laws of 1937, as amended by § 16, chapter 214, p. 857, Laws of 1939, but rather, are to be classed as employment in industry.

(3) The preceding rule of construction applies with equal force when the services above described are performed by employees of a co-operative corporation or association, for the reason that the manner of accomplishing such work by a group of farmers constituting a co-operative which takes over the control of the products delivered to it by its members is factually different from that employed by the individual farmer himself who is engaged in the care, cultivation, packing, and delivery of his own products.

(4) The true test for determining whether or not a worker is engaged in agricultural labor within the meaning of the act in question is not merely the nature of the work performed, but rather, "the nature of the work modified by the custom of doing it."

(5) The exemplificative expression "Agricultural labor; (services customarily performed by a farm hand on a farm for the owner or tenant of a farm)," as used in § 16 (g) (6) (i) of chapter 214, p. 857, Laws of 1939, was an interpretation of the meaning of the term "agricultural labor" as used in the 1937 act, and was intended to include only labor performed on a farm, by a farm hand, for the owner or tenant of the farm.

(6) On the other hand, the act of 1941 (Laws of 1941, chapter 253, p. 870, Rem. Supp. 1941, § 9998-103a), to which further reference will be made later, cannot be considered as interpretative or explanatory of either the 1937 act or the 1939 act, but is purely an amendment of the 1939 act; indeed, it was enacted simply because of certain conditions which in the meantime had been called to the attention of the legislature, but which it did not have in mind when it passed the earlier acts; furthermore, the 1941 act is not retroactive,

nor is it applicable to cases arising under the 1937 and 1939 acts.

(7) Regardless of whether § 22 of chapter 162, p. 615, Laws of 1937 (Rem. Rev. Stat. (Sup.), § 9998-122 [P. C. § 6233-322]) be held to be constitutional or unconstitutional, that section (which provides that if Congress should extend the coverage of the Federal social security act of August 14, 1935, to other exempted services or employment then the Washington act should automatically extend to the same services) has no application to a situation where a Congressional enactment narrows, rather than extends, the coverage.

(8) In enacting § 23, chapter 162, p. 616, Laws of 1937 (Rem. Rev. Stat. (Sup.), § 9998-123 [P. C. § 6233-323]), it was not the intent of the legislature to make the act agreeable to any limitation, or further exemption from the operation, of the Federal act, but, rather, to suspend the operation of the Washington unemployment act until the next session of the legislature, in the event no funds were available under the Federal act to match those of the state.

Having thus set forth in detail the holdings of the *Cowiche* case, we proceed now to an examination of the case of *In re Wenatchee Beebe Orchard Co.*, 16 Wn. (2d) 259, 133 P. (2d) 283, which was decided by one of the departments of this court on January 18, 1943. Respondent herein contends that the *Beebe* case either overruled or else modified the *Cowiche* case.

The facts there were as follows: The Wenatchee Beebe Orchard Company was engaged in the growing, packing, and storage of fruit. It operated five orchards, totaling six hundred acres, and several packing and cold storage plants, one of which was located at Brewster, Washington. In that plant, fruit grown by the company and also fruit grown by many other orchardists was processed, packed, and warehoused. In 1939, approximately 59.9% of the fruit handled by the company was grown in its own orchards.

The company employed at its Brewster plant one Harold J. Eakins as a warehouse laborer, whose duties in-

volved the loading of cars and the piling and trucking of fruit from the packing plant to cold storage.

On January 3, 1940, Eakins filed a claim for unemployment compensation benefits. The claimant's right to such compensation depended upon whether he had sufficient "wage credits" during the third quarter of 1939 to entitle him to the benefits of the unemployment compensation act. The respondent employer contended that certain of the services performed by the claimant in its Brewster fruit packing plant and warehouse constituted "agricultural labor," for the reason that 58% of the claimant's services were performed upon fruit grown by the respondent. If that contention were correct, then, under the facts in that case, the claimant would not be entitled to recover compensation. This court upheld that contention and affirmed a judgment denying the claim.

The sole question involved in the *Beebe* case, and the underlying distinction between that case and the *Cowiche* case, *supra,* are clearly stated in the *Beebe* opinion, as follows:

"In view of this court's decision in the case of *Cowiche Growers, Inc. v. Bates*, 10 Wn. (2d) 585, 117 P. (2d) 624, it may properly be stated that the decision in the case here presented to the court narrows down to a single question; namely, is the packing of apples grown by a farmer and packed in his own warehouse, not on the farm but adjacent to it, an agricultural labor operation? In the *Cowiche* case, this court decided that the services performed in the packing of apples by commercial firms and even by co-operatives, would not constitute agricultural employment, because the operation was not conducted by the farmer or on the farm, and, therefore, was not within the exemption of the statute [quoting Laws of 1939, chapter 214, p. 853, § 16].

"The distinction between the immediate case and the *Cowiche* case, *supra,* is that in the *Cowiche* case the employers were not farmers and did not grow or own the fruit. Their enterprises, located in the cities, were limited to processing the fruit of others, while in this case respondent is a farmer and processes its own fruit in its own plant, off of but adjacent to the farm."

It is thus apparent that the *Beebe* case not only did not endeavor to overrule the *Cowiche* case, but actually affirmed it by recognizing what had been held therein. It is also apparent that the conclusion in the *Beebe* case was reached on the theory that the Wenatchee Beebe Orchard Company was a farmer growing, processing, and packing its own fruit in its own plant, although at the same time packing and processing fruit grown by others. Only in so far as the services there in question related to the respondent company's own fruit were the services held to be agricultural labor within the meaning of the act in question.

It is true, as the respondent in the present case suggests, that, in the concluding portion of the opinion in the *Beebe* case this court, in holding that it was immaterial that the warehouse where the work was done was not actually on the farm but was only adjacent thereto on a railroad siding and to that extent increased the convenience and economy of operation, stated that this did not "change the inherent nature of the work," and that "It was still the *kind* of services, *customarily performed* on a farm." Respondent in this case seizes upon the phraseology just quoted as an indication that this court thereby meant to veer from its holding in the *Cowiche* case and to place upon the statute here involved a construction different from that adopted in the *Cowiche* case. We do not agree with respondent's view. The court had already clearly stated, in the fore part of its opinion in the *Beebe* case, the ground of its decision, and the concluding paragraph was simply an emphasis of the one factual point of distinction between that case and the *Cowiche* case, that is, that the warehouse was not actually on the farm, but rather on a siding adjacent thereto.

As previously stated herein, the *Cowiche* case was an *En Banc* decision, while the *Beebe* case was a departmental holding. The rule of decision declared in the *Cowiche* case is binding on this court until authoritatively overruled. *Mattingly v. O. W. R. & N. Co.*, 153 Wash. 514, 280 Pac. 46. The *Beebe* case does not, and was not intended

to, authoritatively overrule the earlier decision in the *Cowiche* case.

We come now to the latest decision, *State v. Christensen,* consolidated with *In re Appeals of Hansen Bros. Dairy v. Riley,* 18 Wn. (2d) 7, 137 P. (2d) 512, decided May 14, 1943, which the respondent herein further urges as having overruled or modified the *Cowiche* case, *supra.* We may point out, parenthetically, that the *Hansen* case was also a departmental decision, and did not expressly or authoritatively overrule the *Cowiche* case. On the contrary, the *Hansen* case cites the *Cowiche* case several times, each time with approval.

The principal question presented in the *Hansen* case was whether the work performed by certain men who were employed as milk truck drivers and milkhouse men by the owners of various dairy farms was "agricultural labor" as that term is defined in § 14, chapter 253, p. 915, Laws of 1941 (Rem. Supp. 1941, § 9998-119g(6) (i)), the material portion of which, so far as that action was concerned, reads as follows:

"The term 'employment' shall not include:

. "(i) Agricultural Labor—the term 'Agricultural Labor' includes all services performed:

"(1) On a farm, in the employ of any person, in connection with the cultivating of the soil, or in connection with raising or harvesting any agricultural or horticultural commodity, including raising, shearing, feeding, caring for, training, and management of livestock, bees, poultry, and fur-bearing animals and wild life, or in the employ of the owner or tenant or other operator of a farm, in connection with the operation, management, conservation, improvement, or maintenance of such farm and its tools and equipment.

"(2) In handling, planting, packing, packaging, grading, storing, or delivering to storage or to market or to a carrier for transportation to market, any agricultural or horticultural commodity; but only if such service is performed as an incident to ordinary farming operations or, in the case of fruits and vegetables, in their raw and natural state, as an incident to the preparation of such fruits and vegetables for market. The provisions of this paragraph shall not be

deemed to be applicable with respect to services performed in connection with commercial canning or commercial freezing or in connection with any agricultural or horticultural commodity after its delivery to a terminal market for distribution or consumption."

It will be observed that this language of the 1941 act is more specific and much broader than the language quoted above from the 1939 act.

All of the dairies involved in the *Hansen* case owned equipment consisting of the usual farm implements and the necessary dairy equipment, including in at least two of the dairies, a complete pasteurizing plant. They all owned trucks which were kept on the farms and were used in delivering milk to market, by delivery to consumers on regular milk routes and to restaurants and grocery stores. All of the dairies employed milk truck drivers, who worked from eight to ten hours a day, loading the trucks and distributing the milk along the routes, and then returning to the dairy farms. In addition to selling and distributing the milk produced on the farms, the milk truck drivers, as an accommodation to the customers, sold and distributed other dairy products consisting of cream, cheese, butter, and buttermilk, which were purchased by the dairies from other concerns and resold, at a small profit, to the regular milk customers. This added feature was necessary in order to meet the competition of other dairies. One of the dairies owned a pasteurizing plant which was operated on the farm by men in the milkhouse.

It was conceded by all parties in the *Hansen* case that a dairy farm is agricultural in nature, and it is to be borne in mind that all the activities involved in that case were conducted by the owners and operators of the various dairies, not by co-operative organizations or commercial firms. It is also to be borne in mind that the statute there involved was not the 1937 or the 1939 act, but rather the 1941 act, the material portion of which we have quoted above.

On the appeal, this court held that it was the intention of the legislature, in enacting the 1941 amendment, to broaden

the scope of the term "agricultural labor," and that the work of the truck drivers and of the milkhouse men came within the purview of that term as defined by the 1941 act. The theory upon which this court arrived at its conclusion was that, in view of the fact that one of the main purposes of all farm operations is the sale of commodities produced on the farm, and in view of the further fact that the methods of distribution employed by these dairies were not only essential to their successful operation, but were also in accordance with the prevailing local custom, the activities of the truck drivers and milkhouse men must be regarded as connected with, or incidental to, the ordinary dairy farm operations, and therefore within the purview of agricultural labor as defined by the 1941 act. Numerous decisions from other jurisdictions were cited in support of that conclusion.

There is nothing whatever in that opinion which indicates that the court was receding from the position taken by it in the *Cowiche* case. To the contrary, in so far as there is any similarity between the two cases, the *Cowiche* case is relied upon as an authority.

By this analysis of the three cited cases we have endeavored to show that in this state the *Cowiche* case is still the law upon the questions herein involved, arising under the unemployment compensation act as it existed prior to the 1941 amendment, and that it has not been overruled or modified by either the *Beebe* case or the *Hansen* case, *supra*. Furthermore, in view of what we have heretofore said herein, we are not now inclined to overrule, or depart from, the decision in the *Cowiche* case, *supra*.

Respondent urges a further contention to the effect that, since agricultural labor was made exempt by the Federal social security act of 1939 (26 U. S. C. A. § 1426 (h) (4), effective January 1, 1940), § 23 of the Washington act of 1937 (chapter 162, p. 616, Laws of 1937, § 23) must, for the period involved in this action, be construed as likewise making agricultural labor exempt, and that, consequently, the

state no longer has the power to impose or collect the tax or contribution specified in the state act.

The trial court decided that question contrary to respondent's contention, and it is now conceded by the respondent that, in the *Cowiche* case, *supra*, this court considered and decided that very question adversely to the position it now takes. For the reasons given above, we shall not enter upon a further discussion of that question, but will simply say that we adhere to the decision in the *Cowiche* case.

In view of our conclusions herein, the judgment of the trial court in the instant case must be reversed, with direction to that court to enter judgment against the respondent in the amount stipulated by the parties as being the correct amount in the event the ruling of the commissioner be upheld. It is so ordered.

BEALS, JEFFERS, and BLAKE, JJ., concur.

SIMPSON, C. J. (dissenting)—I am unable to agree with the majority opinion, my reasons being the same as those contained in my dissent in *Cowiche Growers, Inc. v. Bates*, 10 Wn. (2d) 585, 612, 117 P. (2d) 624. In addition, it seems to me that the trial court was correct in saying in his memorandum opinion:

"We will take up the first of petitioner's contentions, that is, that the labor in question is excluded from the act by reason of the definition given in Chapter 214, p. 857, Laws of 1939, Sec. 16 (6): 'The term "unemployment" shall not include agricultural labor (services customarily performed by a farm hand on a farm for the owner or tenant of the farm).'

"This definition must be considered in connection with the stipulation of June 30, 1942, paragraph 5:

" 'That none of the services hereinbefore mentioned were rendered upon a farm, but were performed in packing houses and warehouses owned and operated by petitioner, although such services were the same and identical services usually rendered in preparing commodities for market upon a farm by those farmers having large enough farms to be able to afford the necessary equipment incident to the washing, sorting and packing of their own products.'

"When the definition and the facts as stipulated are read together, there would seem to be no room for construction except that applied to the plain use of the English language; but the forest of argument and legal interpretation seems to have made that which was simple a question highly complex, and consideration must be given to the cases above cited.

"The act refers to 'services customarily performed by a farm hand on a farm.' The stipulation says the services were the same identical services 'usually rendered . . . upon a farm.'

"It is seldom that one set of words can more aptly be fitted into another set. Unless there is something, therefore, in the decisions which precludes such conclusion, the court must hold that the services now under consideration are excluded from the operation of the act. To accept that reasoning would be to decide the case without further consideration, but both parties submitted and argued other phases which will be given consideration.

"The situation in the Cowiche Growers case, supra, was almost identical with that in the instant case except as to one important particular. In both cases the nature of the work is set forth in detail and there is no substantial variance in such detail as between the two cases. One of the issues, however, in the Cowiche case was whether or not such detailed work was 'services customarily performed by a farm hand on a farm,' while in the case now under consideration it was stipulated (Paragraph 5—Stipulation of June 30, 1942, as above quoted) that 'such services were the same and identical services usually rendered in preparing commodities for market on a farm. . . .'

"In the Cowiche case, the court cited with approval, on page 602, and italicized the language of the Federal Court in North Whittier Heights Citrus Association v. National Labor Relations Board, 109 F. (2d) 76:

" 'The factual change in the manner of accomplishing the same work is exactly what does change the status of those doing it.' If this language is taken literally, it must be said that the court thus by judicial decree changed the standard to be applied from the *character* of the work (services customarily performed) to the *manner* of performance.

"The court again seems to deflect the apparent intention of the legislature when on page 605 it said: 'The legislature . . . indicated in no uncertain terms that the term "agricultural labor" as used in the 1939 act, includes *only labor*

*performed* on a farm,' thus deleting and giving no weight to the word 'customarily' as used in the 1939 act and changing the standard from the *kind* of work in the *place* of performance.

"We have dwelt somewhat at length upon this phase of the case because we are constrained to the belief that the supreme court did not intend to lay down a general rule for the guidance of the lower courts as contrary to the obvious intent of the legislature as the quoted language would imply, and for the further reason that later decisions which may be construed as modifying the Cowiche decision should be considered.

"The next case applying to the point now under consideration is the Wenatchee Beebe Orchard case, 116 Wash. Dec. 223. The issue involved (p. 226) 'narrows down to the single question; namely, is the packing of apples grown by a farmer and packed in his own warehouse, not on the farm but adjacent to it, an agricultural labor operation?' Superficial examination would indicate that the answer to that question had already been given in the Cowiche Growers case. Indeed, the supreme court (p. 226) so indicated: 'In the Cowiche case this court decided that the services . . . would not constitute agricultural employment *because* the operation was not conducted by the farmer on the farm . . .'

"But the trial court did not feel bound by this narrow construction of the Cowiche case, nor does this court feel such obligation. We feel it our duty to put our own construction upon the act if such construction can be reconciled to previous decisions in any manner, or even if such construction called for a change of position heretofore taken by the supreme court.

"This position is justified by the fact that the trial court did in the Beebe case depart from the narrow interpretation of the Cowiche case, and was upheld in so doing. The supreme court in the latter case (p. 226) in quoting the 1939 act not only included the word 'customarily,' but italicized it, thus giving to that word the importance which the legislature evidently intended.

"It is noted that the only dissenting opinion in the Beebe case was based on the ground that the decision was inconsistent with that in the Cowiche case.

"Whether it is said that the latter case reversed the former or merely distinguished it is of little moment. The relationship between the two decisions is sufficient reason for

going one step further in drawing the proper distinction between the Cowiche case and the one now under consideration.

"The next case bearing on the question is Hansen Bros. Dairy v. Riley, 118 Wash. Dec. 7.

"The issue was whether or not milk truck drivers and milkhouse men are agricultural laborers. It will be noted that the period involved brought the case within the 1941 act instead of the 1939 act, but the questions discussed were pertinent to both acts.

"It will be noted that the definition of the term 'agricultural labor' in the 1941 act is in no way inconsistent with the 1939 act, but merely elaborates such definition. It will also be noted that such legislative definition fits almost exactly into paragraph 3 of the June 30, 1942 stipulation, which paragraph outlines the work being done by the petitioner herein. . . ."

April 12, 1944. Petition for rehearing denied.