## MECHANICAL FARM EQUIPMENT DISTRIBUTORS, INC., v. PORTER.

### No. 11227.

Circuit Court of Appeals, Ninth Circuit.

June 24, 1946.

Howe & Finch, of Palo Alto, Cal., for appellant.

George Moncharsh, Deputy Adm. for Enforcement, Milton Klein, Director, Litigation Division, David London, Chief, Appellate Branch, and Harold Craske, Attorney, OPA, all of Washington, D. C.,

and Herbert H. Bent, Regional Litigation Attorney, and William H. Brunner, Dist. Enforcement Attorney, OPA, both of San Francisco, Cal., for appellee.

Before DENMAN, BONE and ORR, Circuit Judges.

BONE, Circuit Judge.

Appellant is a dealer in used tractors. On October 5, 1944, appellee-Administrator instituted an action against appellant alleging that appellant had sold used tractors at prices in excess of M.P.R. No. 133 and M.P.R. No. 136, both as amended. The Administrator, under Section 205(e) of the Emergency Price Control Act, 50 U.S.C.A. Appendix, § 925(e) (hereinafter referred to as the Act), demanded damages in treble the amount of the overcharges, and, under Section 205(a) of the Act, asked for a final injunction enjoining appellant from violating the above Regulations or the Act. The district court ordered and entered judgment against appellant for the actual amount of the overcharges which the Administrator alleged, and granted an injunction. The appeal is from this judgment.

It was stipulated by the parties that all the sales of crawler tractors here involved were made to farmers for general farming and agricultural uses, except one which was purchased for use in lumbering operations. Also that all of the sales in question, thirteen in number, were made in the period between August 1, 1943 and September 25, 1943, and that none of the purchases or sales was made for use and consumption other than in the course of trade or business.

Appellant raises three contentions on this appeal: First, that sales of crawler tractors to farmers during this period did not come within the scope of M.P.R. No. 136, and were, therefore, left subject to the G.M.P.R. Second, that if the sales do come under M.P.R. No. 136, then the Teresi and Badami sales were at prices under the ceilings provided by that Regulation, and that damages should not have been assessed upon those sales. Third, the issuance of an injunction was not proper in this case.

First. M.P.R. No. 136, which controls the maximum sales prices for used crawler tractors, provided in § 1390.2 for exclusion, from its application, of certain types of sales. Among such exempted categories were sales defined in § 1390.2(f) which states: "Any sale or delivery at retail of a machine or part by a person other than the manufacturer thereof. * * * For the purpose of this exclusion, a sale or delivery is deemed to be 'at retail' (1) when made to an ultimate consumer, other than an industrial, commercial, or governmental user * * *".

Appellant claims that under a proper interpretation of this Section a farmer is not a commercial user, and, therefore, sales to him would be excluded from the scope of M.P.R. No. 136.

However the Administrator has consistently interpreted M.P.R. No. 136 as covering sales to farmers. In Price Interpretation 17, dated November 15, 1942, it is said: "Repair Services on Tractors. The Regulation [M.P.R. No. 136] is applicable to repair services on industrial and crawler tractors, even though the tractors are used for agricultural purposes." 8 O.P.A.Services, p. 40:2018.

On September 1, 1943, the Administrator issued an interpretation of M.P.R. No. 136 as follows: "Crawler type tractor sold by one farmer to another. The sale of crawler tractor by one farmer to another is subject to the regulation. Such a sale is not a sale 'at retail', except pursuant to Section 1390.2(f), because a farmer is a commercial user. A farmer is considered a commercial user, since he operates his farm as a commercial activity and purchases the equipment for use in carrying out that activity."

This interpretation is cited with approval and quoted in Bowles v. Trullinger, 9 Cir., 152 F.2d 191, 193.

If the meaning of the words of an administrative interpretation is in doubt, the court must look to the administrative construction of the regulation. And this construction is "of controlling weight unless it is plainly erroneous or inconsistent

with the regulation." Bowles v. Seminole Rock & Sand Co., 325 U.S. 410, 414, 65 S.Ct. 1215, 1217, 89 L.Ed. 1700; Bowles v. Crawford & Doherty Co., 9 Cir., 154 F.2d 431, 433. Certainly there is nothing erroneous or irrational in interpreting the word "commercial" as including farming activities. Farmers have been construed to be in a "trade or business" within the purview of Section 205(e) of the Act. Bowles v. Trullinger, supra, and cases cited, and see Speten v. Bowles, 8 Cir., 146 F.2d 602, 604 n. 5. The term "commercial" may have a broad or narrow meaning, and in its broad meaning it encompasses all business activities. United States v. Public Service Co., 10 Cir., 143 F.2d 79.

Appellant directly attacks the Administrator's interpretation of the language of Section 1390.2(f), maintaining that the phrase "industrial, commercial, or governmental user" should be construed narrowly. It cites cases which narrowly construed the word "commercial" or like words in similar phrases in variously unrelated statutes.[1] Appellant claims that in the light of these cases, the phrase should be narrowly construed. In view of the Administrator's interpretation, however, we do not find these cases persuasive.

■■■■ Appellant points to no inconsistent interpretations on the part of the Administrator.[2] There was, however, a circular letter sent on July 10, 1943 to members of the trade including appellant by the "San Francisco district price specialist" which stated that a sale of a used crawler tractor to a farmer would be a sale at retail and therefore excluded from M.P.R. No. 136 and, instead, would come under the G.M.P.R. Appellant does not claim that this letter works an estoppel upon the Administrator, for a "district price specialist" is not an officer whose interpretation binds the Administrator. See O.P.A. Revised Procedural Regulation No. 1 (7 F.R. 8961, O.P.A.Service p. 310:51) §§ 54, 55(b); Wells Lamont Corp. v. Bowles, Em. App., 149 F.2d 364, 367; Schreffler v. Bowles, 10 Cir., 153 F.2d 1. It appears from the record, moreover, that appellant continued to set its prices by the formulas provided in M.P.R. No. 136, and not those in the G.M.P.R.

Second. Appellant maintains that if M.P.R. No. 136 applies to these sales, still the sales to Teresi and Badami were at prices under the ceilings provided in that regulation since each sale was of a reconditioned tractor, guaranteed in writing and so invoiced. M.P.R. No. 136, § 1390.11(b)(1) provides that, as applicable to the tractors under consideration, the maximum price for a rebuilt, tested, and guaranteed machine, shall be 85% of the new base price, whereas under § 1390.11(c)(1) the legal price for such secondhand tractor, when not rebuilt and guaranteed, shall be only 55% of the new base price. § 1390.11(2) which defines a rebuilt tested and guar-

---

[1] Appellant cites: Terrace v. Thompson, 263 U.S. 197, 44 S.Ct. 15, 68 L.Ed. 255; United States v. Public Service Co., 10 Cir., 143 F.2d 79; State ex rel. v. Smith, 342 Mo. 75, 111 S.W.2d 513; Marks Co. v. United States, 12 Ct.Cust. App. 110; In re Yakima Fruit Growers, 20 Wash.2d 202, 146 P.2d 800; and see Schreffler v. Bowles, 10 Cir., 153 F.2d 1.

[2] Appellant claims that Amendment 96 to M.P.R. No. 136, which amended § 1390.2(f) (8 F.R. 10662) shows that the Administrator construed M.P.R. No. 136 contrary to his interpretation of September 1, 1943, set out above. In this amendment, the Administrator added a phrase to § 1390.2(f) in order that "the sale or delivery at retail of automotive trucks, trailers and buses (as described in Section 1390.33(c)) shall not be excluded from but shall be covered by this regulation". Appellant's argument is that since busses and trucks could only be sold to those who would use them for industrial or commercial purposes there would be no use in expressly including those sales within the regulation unless the Administrator meant that sales of trucks to farmers would not be a "commercial sale", but a sale to an "ultimate consumer", and, therefore, he would find it necessary to include trucks within the coverage of this regulation so that sales of trucks to farmers would be covered. In the face of the Administrator's clear statements of intention of November 25, 1942, and September 1, 1943, we cannot hold that appellant's finding of an implied intent in the above amendment is persuasive.

anteed machine, is set out below.[3] Appellant argues that the contract of sale to Teresi was itself an invoice and likewise contained "the written guarantee". The same is said concerning the Badami sale. In the Teresi transaction, appellant endorsed on the contract of sale the following notation: "with respect to the tractor and equipment herein ordered, the distributor or dealer makes to the purchaser the same and no other warranty than the following to wit: 90 days guarantee".

In the Badami sale, appellant endorsed, also on the contract of sale, the remark: "The distributor or dealer makes to the purchaser the same and no other warranty than the following to wit: 2 months on faulty material".

■ Assuming, without deciding, that a contract of sale and an invoice may be merged in one instrument (under § 1390.11 (2)) it is our view that the sketchy notations on these contracts fail to measure up to all of the requirements of a rebuilt and guaranteed machine specified in this regulation (see footnote 3). Its requirements are plain, simple and direct, and we can not say that appellant complied with them by the merged invoice and contract here employed.

■ Going beyond this, the facts in the case do not show that the tractors in question come within the requirements of § 1390.11(2). It does not appear that anything was spent in repairing the Teresi tractor before its sale. Some $244.00 in free service was spent by appellant on the tractor within the 90 day guarantee period. The regulation, however, requires the machine to be "rebuilt" *before the sale*. Appellant did expend $50.23 in reconditioning the Badami tractor. However, in neither case does it appear from the evidence that the tractors were invoiced as "rebuilt", nor does it appear that they were tested under power.

■ Third. Appellant lastly maintains that an injunction was not proper under the facts in this case. It relies principally upon Bowles v. Arlington Furniture Co., 7 Cir., 148 F.2d 467. In that case the Circuit Court found that, at best, there was merely a technical violation, that the company had taken all reasonable steps to protect against violations, and to cooperate with the OPA, and that an injunction would serve no useful purpose since the company was out of business. In the present case, appellant has been guilty of thirteen different overcharges, and, the record shows, has failed to keep many records required by the applicable regulations. We cannot say that the District Court abused its discretion. See Bowles v. 870 Seventh Ave. Corp., 2 Cir., 150 F.2d 819.

Judgment affirmed.

---

[3] § 1390.11(2) of M.P.R. No. 136 provides:

"A 'rebuilt and guaranteed' machine or part is a machine or part (i) in which all worn or missing components which should have been replaced or repaired for satisfactory operation have been replaced or repaired, (ii) which carries a binding written guaranty of satisfactory operation for a period of not less than 60 days, and (iii) which is expressly invoiced as a rebuilt and guaranteed machine or part or its equivalent, and in addition, in those cases where the machine or part operates under power or pressure, has been tested under power or pressure so as to prove that it has a substantially equivalent performance to that of a new machine or part * * * ".