WIGGINTON, Judge.
We are petitioned for a writ of certi-orari to review an order of the Florida Industrial Commission holding the petitioner liable for the payment of contributions under the Unemployment Compensation Law of this State.[1]
Petitioner, a non-profit corporation organized under Chapter 618, Fla.Stats., F.S.A., owns and operates a livestock auction market in Walton County, Florida. By the terms of the statute under which it was incorporated, as well as by its charter, the association is authorized to engage in a variety of activity, including the purchase and sale of agricultural products, machinery and farm supplies. Its members are farmers who live and raise livestock within the area served by the market.
It is contended by petitioner that it is excluded from the provisions of the statute because (a) the services performed by its employees come within the exemption of “agricultural labor” that is “performed as an incident to ordinary farming operations,” prior to delivery of the commodity to a “terminal market for distribution for consumption” [2] or (b) the service performed by its employees is for an “agricultural or horticultural organization exempt from [federal] income tax * * * ” [3] The evidence reveals and the Commission found that petitioner employs one full-time manager and several part-time employees, such as a bookkeeper, an auctioneer, and stock-handlers. Sales are conducted on one day each week at which time any person, whether a member of the association or not, who desires to sell may bring his livestock to the market where each animal is weighed, penned and processed for the sale. During the calendar year 1956 sales for non-members exceeded those for members. The association neither buys nor sells on its own behalf, but merely conducts the auction sale for a percentage of the gross sale priced. As is the custom of the industry, the livestock owner retains the right to reject any and all bids. Petitioner’s net profits, derived after deducting the expenses of operation, are subject to distribution to its members in accordance with the provisions of the statute under which it is incorporated.
In considering the questions concerning exemptions from the payment of unemployment compensation contributions it is helpful to understand the underlying philosophy that made it desirable for the Legislature to so provide. It is generally agreed that the relatively great expense and inconvenience of collection, as compared to the resulting benefits, justifies the exemption of services performed by agricultural labor.[4] Recognizing that, due *649 to the spasmodic and seasonal nature of their undertakings, farmers are not likely to maintain adequate records, which are an important aid to the proper computation and verification of the tax, it seems reasonable and probable that this practicality — avoidance of administrative difficulty in ascertaining and collecting the tax at an expense disproportionate to the resulting advantage — is in fact the one motivating the exemption of agricultural labor, rather than any paramount purpose to benefit and encourage that particular industry.[5] The practicalities which make such an exemption desirable as to the agricultural industry have no application to a business association that by its very nature requires the keeping of complete and accurate records and accounts in order that expenses may be determined and profits, if any, distributed among its members. Such records would necessarily include the salaries and wages paid persons who render services to the business during its year-round operations and who occupy a status approaching the same degree of permanency as is experienced by employees in any other commercial enterprise. Thus, it has been held that a packing house operated by a cooperative association is not subject to the administrative difficulty and inconvenience that constitutes the principal motivation for the exemption of the agricultural industry from coverage by unemployment insurance legislation.[6] The same holding applies with.equal force to the operation of livestock cooperative associations.
Petitioner contends, however, that since the cooperative in this case is composed exclusively of members engaged in agriculture and performs services necessary to the sale of livestock owned by its members, its function constitutes an incident to ordinary farming operations within the meaning of the statute. With this contention we cannot agree.
While it may be true that a farmer is-free to market his own product as an incident to his farming operation and thereby secure for himself the protection and benefits of the statutory exemption, it does not follow that he can elect to deliver his product to another person or entity for marketing and at the same time transfer his immunity to the person or entity undertaking that function. Our Supreme Court had occasion to treat this subject in Florida Industrial Commission v. Growers Equipment Co.[7] In that case the owner of the company, which was engaged in processing and canning citrus fruit, also owned or controlled several other corporations engaged in producing the citrus to be processed. It was there contended that the processing company was entitled to the exemption since its owner was also a producer and, therefore, its services were incident to ordinary farming operations. In rejecting this contention the Court, speaking through Mr. Justice Buford, said: “Undoubtedly, under the provisions of the Act here under consideration, if the grower, whether a corporation or an individual, grows and processes its own fruit, then its processing activity does not come within the purview of the Act because it is then an incident to the horticultural operation of the owner, but when several different individuals or corporations, or different individuals and corporations, produce fruit and deliver that fruit for packing and processing to another individual or corporation which is engaged solely in the enterprise of packing and processing fruit, then the exemption does not apply to the packing and processing operation.” [8] It follows that farmers, corporate or otherwise, who produce and market their own livestock are exempt as to *650 both operations; but, when they merely produce and then deliver to a separate entity for marketing, the latter is not exempt even though it be owned by the producer.[9]
Petitioner’s contention that it does not constitute a “terminal market” is relatively unimportant under our holding that its services are not incident to ordinary farming operations. Petitioner contends, however, that the statutory provision which precludes an application of the agricultural exemption to commodities “after * * * delivery to a terminal market for distribution for consumption * * * ” does not operate as a bar to its entitlement to the exemption since livestock sold by it is purchased for many and varied uses such as slaughter, or for stackers, feeders or milk production. It therefore reasons that the livestock delivered for sale does not constitute a finished product sold or delivered “for consumption.” The fallacy of this argument lies in the fact that “consumption” as it appears in the statute does not mean ultimate consumption. Were we to project the petitioner’s contention to its logical extremity the exemption here sought would carry to the local market place whence the product is finally purchased by some housewife with an eye to placing it — broiled, sizzling and blessed — on her dining table for a hungry family. The consumption contemplated by the Legislature was not that occurring at the dining table, but that which takes place at the market from which the commodity is set afloat in the channels of commerce. In the instant case, the use made of livestock after its purchase is of no concern to the farmer by whom it was sold, nor is the fact that it may be utilized for many different purposes of any consequence. The fact remains that the petitioner’s operation affords a ready market for the commodity in the condition in which it is delivered by the seller and received by the buyer.[10] We are therefore of the opinion that the petitioner is a terminal market within the purview of the statute and that services performed by its employees cannot be considered exempt agricultural labor under F.S. § 443.03(5) (g) 1, par. d, F.S.A.
Lastly, it is asserted that as a nonprofit agricultural association petitioner is exempt from federal income taxes under § 501(c) (5) of the Internal Revenue Code, 26 U.S.C.A. § 501(c) (5), and is therefore exempt under F.S. § 443.03(5) (g) 11 par. b, F.S.A. It is to be noted that although F.S. Chapter 618, F.S.A., defines associations incorporated thereunder as “non-profit”, inasmuch as they are not primarily concerned with amassing corporate profits as such, provision is also made for a return on stock or membership capital in an amount not to exceed eight per cent per annum. And, contrary to the facts in the instant case, business done with nonmembers shall not exceed the business done with members during the same period.[11] Furthermore, the record before us is devoid of any proof whatever that petitioner is exempt from the f ederal tax as alleged. On the contrary, the Industrial Commission found petitioner was not so entitled on the ground that its operation is not restricted solely to dealing in agricultural products. It was also found that although application was made for the federal exemption it had not as yet been granted. On this state of the record it must be held that the petitioner has failed to prove its right to this exemption.
For the foregoing reasons certiorari is denied and the petition is hereby dismissed.
STURGIS, C. J., and CARROLL, DONALD K., J., concur.

. Chapter 443, Fla.Stats., F.S.A.

. F.S. § 443.03(5) (g) (1) (d), F.S.A.
“As used in this chapter unless the context clearly requires otherwise: * ⅜ * the term ‘employment’ shall not include: Agricultural labor; the term ‘agricultural labor’ includes all services performed ⅜ ⅜ in handling ' * * * any agricultural * * * commodity; but only if such service is performed as an incident to ordinary farming operations ⅜ * * The provisions of this paragraph shall not be deemed to be applicable with respect to service performed in connection with * ⅜ * any agricultural ⅜ ⅜ * commodity after its delivery to a terminal market for distribution for consumption ⅜ * ⅜.”

. F.S. § 443.03(5) (g) (11) (b), F.S.A.
“As used in this chapter unless the context clearly requires otherwise * * * the term ‘employment’ shall not include * * ⅜ services performed in the employ of an agricultural or horticultural organization exempt from income tax under § 501(c) (5) of the internal revenue code.”

. 48 Am.Jur., Social Security, Unemployment Insurance, etc., § 29, p. 533; 81 O.J.S. Social Security and Public Welfare § 115, p. 173.

. Carmichael v. Southern Coal & Coke Co., 301 U.S. 495, 57 S.Ct. 868, 81 L.Ed. 1245.

. Supra Note 4.

. 152 Ela. 595, 12 So.2d 889.

. Supra Note 7, 152 Ela. at page 607, 12 So.2d at page 895.

. See: Square Deal Fruit Co. v. Florida Industrial Commission, Fla.1949, 42 So.2d 276; In re Yakima Fruit Growers Ass’n, 20 Wash.2d 202, 146 P.2d 800; H. Duys & Co. v. Tone, 125 Conn. 300, 5 A.2d 23.

. In the Matter of Lazarus, 1945, 294 N.Y. 613, 64 N.E.2d 169; See: 55 C.J.S. Market p. 801.

. F.S. § 618.01(3), F.S.A.